Tully, Appellant, v. Fred Olson Motor Service Company and another, Respondents.*

*March 30—April 30, 1965.*

* Motion for rehearing denied, with costs, on June 25, 1965.

For the appellant there was a brief by *Bernstein, Wessel, Weitzen & Lewis* and *John H. Wessel,* all of Milwaukee, and oral argument by *John H. Wessel.*

For the respondent Fred Olson Motor Service Company there was a brief by *Federer & Ludwig* of Milwaukee, and oral argument by *Carl J. Ludwig.*

For the respondent Chauffeurs, Teamsters & Helpers "General" Local No. 200, there were briefs by *Goldberg, Previant & Uelmen* of Milwaukee, and oral argument by *David Previant.*

HEFFERNAN, J.  It is the opinion of this court that each of the three causes of action set forth in the plaintiff's complaint stated a cause of action under sec. 301 (a) of the

Labor Management Relations Act of 1947 (29 USCA, sec. 185), that none of these causes of action are exclusively within the jurisdiction of the national labor relations board, and that the statute to be applied is the Wisconsin six-year limitation.

The trial court held that a sec. 301 (a) action was stated by plaintiff's first and third actions, but did not so find in connection with the second cause of action (representation by the union). That section provides:

"Sec. 301. (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

It is not disputed that causes of action one and three state sufficient sec. 301 (a) allegations. We hold that the second cause of action also does so. The case of *Humphrey v. Moore* (1964), 375 U. S. 335, 84 Sup. Ct. 363, 11 L. Ed. (2d) 370, is analogous to the second cause of action in the instant case. In *Humphrey* two auto-transport companies merged a portion of their operations. This necessitated a "dovetailing" of employees, with consequent problems of seniority, layoff, etc. Each group of employees was represented by the same union, and both employers were subject to almost identical collective-bargaining agreements. The agreement provided that in the event of mergers the dispute was to be resolved by agreement between the union and the employers involved—the controversy was to be submitted to the joint grievance committee. The action of the joint committee resulted in a larger number of layoffs for the employees of the "Dealers" company. The respondent, Moore, on behalf of himself and other employees of "Deal-

ers," asked in the Kentucky courts for an injunction to prevent the decision of the joint grievance committee from being carried out. The complaint, to the extent that it is pertinent here, alleged that the plaintiffs had relied upon the union to represent them. The decision was charged to be arbitrary and capricious, contrary to the existing practice in the industry, and violative of the collective-bargaining contract. Although arising out of different facts, the allegations in *Humphrey*, which also asked for damages, are substantially the same as those in the case at bar. In each case, the heart of the allegation is the failure of the union to conform with the provisions of the contract. The supreme court of the United States stated in *Humphrey, supra,* at page 342:

"The undoubted broad authority of the union as exclusive bargaining agent in the negotiation and administration of a collective bargaining contract is accompanied by a responsibility of equal scope, the responsibility and duty of fair representation."

The United States supreme court held that allegations were sufficient to charge a breach of duty by the union in the process of settling grievances at issue under the collective-bargaining agreement. The court held that the action was one that arose under sec. 301 of the LMRA. This decision appears to follow the explicit language of the statute, "Suits for violation of contracts . . . may be brought." In the instant case the plaintiff has alleged the violation of a contractual duty, and so states a cause of action under the statute.

The trial court, however, without making a determination whether this was a sec. 301 (a) cause of action, held that the wrong alleged was solely within the jurisdiction of the NLRB on the ground that only ". . . if an action involves the internal affairs of a union and restoration of union membership . . . the state remedy has not been pre-empted by

Congress through the Taft-Hartley Act." It should be noted that the cases upon which the respondents rely are not cases arising under sec. 301 (a). The United States supreme court in *Plumbers' Union v. Borden* (1963), 373 U. S. 690, 83 Sup. Ct. 1423, 10 L. Ed. (2d) 638, discussed the rules of federal pre-emption and the exceptions that arose in *Machinists v. Gonzales* (1958), 356 U. S. 617, 78 Sup. Ct. 923, 2 L. Ed. (2d) 1018, and *San Diego Unions v. Garmon* (1959), 359 U. S. 236, 79 Sup. Ct. 773, 3 L. Ed. (2d) 775. The court there stated the rule:

". . . that in the absence of an overriding state interest such as that involved in the maintenance of domestic peace, state courts must defer to the exclusive competence of the National Labor Relations Board in cases in which the activity that is the subject matter of the litigation is arguably subject to the protections of § 7 or the prohibitions of § 8 of the National Labor Relations Act." *Plumbers' Union v. Borden, supra*, page 693.

But significantly this statement carries the following footnote (Footnote 3, p. 693):

". . . We do not deal here with suits brought in state courts under § 301 or § 303 of the Labor Management Relations Act, 61 Stat. 156, 158, 29 U. S. C. §§ 185, 187, which are governed by federal law and to which *different principles are applicable.* See, *e.g., Smith v. Evening News Assn.,* 371 U. S. 195." (Emphasis supplied.)

See also Footnote 9, *Teamsters Local v. Lucas Flour Co.* (1962), 369 U. S. 95, 82 Sup. Ct. 571, 7 L. Ed. (2d) 593. This position, making the distinction, was most strongly stated in *Smith v. Evening News Asso.* (1962), 371 U. S. 195, 197, 83 Sup. Ct. 267, 9 L. Ed. (2d) 246.

"*Lucas Flour* and *Dowd Box,* as well as the later *Atkinson v. Sinclair Refining Co.,* 370 U. S. 238, were suits upon collective bargaining contracts brought or held to arise under § 301 of the Labor Management Relations Act and in these

cases the jurisdiction of the courts was sustained although it was seriously urged that the conduct involved was arguably protected or prohibited by the National Labor Relations Act and therefore within the exclusive jurisdiction of the National Labor Relations Board. In *Lucas Flour* as well as in *Atkinson* the Court expressly refused to apply the pre-emption doctrine of the *Garmon* case; and we likewise reject that doctrine here where the alleged conduct of the employer, not only arguably, but concededly, is an unfair labor practice within the jurisdiction of the National Labor Relations Board. The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301. If, as respondent strongly urges, there are situations in which serious problems will arise from both the courts and the Board having jurisdiction over acts which amount to an unfair labor practice, we shall face those cases when they arise. This is not one of them, in our view, and the National Labor Relations Board is in accord."

We conclude, therefore, that the cases cited in support of the decision of the trial court are not applicable to this, a sec. 301 (a) cause of action, and hence the second cause of action, like the first and third, is not subject to pre-emption by the NLRB.

A cause of action brought under sec. 301 (a) of the LMRA is within the jurisdiction of the state courts as well as the federal courts. Their jurisdiction in respect to these causes of action is concurrent. *Dowd Box Co. v. Courtney* (1962), 368 U. S. 502, 82 Sup. Ct. 519, 7 L. Ed. (2d) 483. However, it was decided later in *Teamsters Local v. Lucas Flour Co., supra,* page 103, that:

"The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute. Comprehensiveness is inherent in the process by which the law is to be formulated under the mandate of *Lincoln Mills,* requiring issues

raised in suits of a kind covered by § 301 to be decided according to the precepts of federal labor policy.

"More important, the subject matter of § 301 (a) 'is peculiarly one that calls for uniform law.' "

However, *Textile Workers v. Lincoln Mills* (1957), 353 U. S. 448, 77 Sup. Ct. 912, 1 L. Ed. (2d) 972, held that it was the federal law that was to be applied in state courts. But state law, if compatible with the purpose of sec. 301, could be used in order to find the rule that will best effectuate federal policy.

In *Clark v. Hein-Werner Corp.* (1959), 8 Wis. (2d) 264, 99 N. W. (2d) 132, 100 N. W. (2d) 317, we recognized this principle, but did not find a conflict between federal and state law that made necessary a determination of which law to use, and in addition the court bottomed its decision primarily on cases involving federal law.

The *Lincoln Mills Case* made it clear that:

". . . the substantive law to apply in suits under § 301 (a) is federal law, which the courts must fashion from the policy of our national labor laws. . . . The Labor Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem . . . . [citing cases]. Federal interpretation of the federal law will govern, not state law . . ." *Textile Workers v. Lincoln Mills, supra,* page 456.

We can therefore conclude that the jurisdiction to decide sec. 301 (a) cases is not vested exclusively in the NLRB, nor even in the federal courts. It is a jurisdiction that the federal courts share with the states, but it is clear that federal law, if there be any, is the law to be applied.

We then face up to the very crux of the appeal. The trial court held that all of the causes of action were barred by the federal statute of limitations applicable to unfair labor practices. Certainly the federal limitation is to be applied if there is one. It is urged that the proper limitation appears in sec. 10 (b) of LMRA (1947), 29 USCA, sec. 160 (b). It details the procedure for bringing unfair labor practices before the NLRB and provides *inter alia*, ". . . no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board . . ."

We are urged to invoke "judicial inventiveness" to make the six-month limitation specified for unfair labor practices before the NLRB applicable to breach of contract suits (under sec. 301 (a)) arising under another section of the act.

The "judicial inventiveness" that the respondent asks for would have us apply a statute designed for the disposition of unfair labor practices in an administrative tribunal of the United States to an action for breach of contract (that may or may not also constitute an unfair labor practice) in a state court. One thing is clear, and that is that no limitation is specifically made applicable to sec. 301 (a) by any provision of the LMRA. If we are to find a limitation in the act, it can only be by what we consider an inordinate and unjustifiable transplanting of the provisions of one section to another. In the dissenting opinion to *Smith v. Evening News Asso., supra,* Mr. Justice BLACK (who disagreed with the holding that sec. 301 suits that were unfair labor practices could be brought into the courts rather than before the NLRB) pointed out the extent to which the court would overreach itself to apply the six-month statute:

"Of course this Court could later, by another major statutory surgical operation, apply the six-months Labor Board statute of limitations to actions for breach of collective bar-

gaining contracts under § 301. But if such drastic changes are to be wrought in the Act that Congress passed, it seems important to me that this Court should wait for Congress to perform that operation." *Smith v. Evening News Asso., supra,* page 203.

We agree with Mr. Justice BLACK's analysis that the application of the six-month statute would require major surgery, beyond the powers of this court. We have been shown no authority that would give this court the power to revise a federal statute, even though it is ably argued that such a revision is desirable or necessary.

Nor is this conclusion without precedent. *Reliford v. Eastern Coal Corp.* (6th Cir. 1958), 260 Fed. (2d) 447, specifically held that Congress provided no limitation on sec. 301 actions, and the court proceeded to apply the fifteen-year statute of limitations applicable in Kentucky to written contracts.

In the case of *Fischbach & Moore, Inc., v. International Union of Operating Engineers* (D. C. Cal. 1961), 198 Fed. Supp. 911, the court held that in a sec. 303 action under the LMRA that there was no federally created statute of limitations in the act. It considered applying the six-month limitation of 10 (b) and a somewhat analogous statute appearing under the antitrust statute, 15 USCA, sec. 15b with a four-year limitation. The court recognized the need for uniform interpretation of the LMRA, that the statute was a matter of national concern and should not depend upon the vagaries of local law for its interpretation. Yet that court concluded:

"It is the court's strong opinion that where a choice of policy is to be made which limits the exercise of a legislatively created right, such choice is obviously most appropriately to be made by the legislative branch of the government. If Congress believes that stale claims are being prosecuted under Section 303, then it is up to Congress to determine the

cutting-off point . . ." *Fischbach & Moore, Inc., v. International Union of Operating Engineers, supra,* page 915.

The court in that case refused to apply a state statute of limitations and invoked the equitable doctrine of laches. The court held that an action under sec. 303 which had arisen more than three years prior to filing of the complaint was not barred.

In *Harmon v. Martin Bros. Container & Timber Products Corp.* (D. C. Or. 1964), 227 Fed. Supp. 9, the court held that the six-month limitation did not apply to a sec. 301 action.

Much is made of the cases following *McAllister v. Magnolia Petroleum Co.* (1958), 357 U. S. 221, 78 Sup. Ct. 1201, 2 L. Ed. (2d) 1272. There the court held that the federal limitation of three years under the Jones Act must be applied to a related cause of action for "unseaworthiness" since both must be sued upon in a single action. The court there held that the application of the state two-year statute would defeat a federally created right. Among other distinctions it should be noted that the state limitation proposed in *McAllister* would have limited or curtailed the federally created right. To apply the state statute in the instant case will, however, preserve the rights granted under sec. 301.

Since we find no limitations spelled out in the LMRA and none that can be supplied by reasonable construction, the state statute of limitations is applicable.

"Where federal statutes, which create federal rights of action, do not include a period of limitations, it has been the practice of state and federal courts to apply state statutes of limitations." *McAllister v. Magnolia Petroleum Co., supra,* page 228, concurring opinion.

It is our opinion that the six-year limitations set forth in sec. 330.19 (3), Stats., is applicable to this case. We agree

with the trial court that the one-year limitation of sec. 111.07 (14) is not relevant since that limitation is made applicable only to the right to proceed under *that* section, while in the case before us we are concerned with the right to pursue a remedy resulting from the alleged breach of a federally created right.

We do not contend that the six-year limitation is ideal. We reach this conclusion, because it appears to us that all arguments for other periods of limitation that have been advanced by the parties are palpably untenable. We are inclined to agree that a six-year limitation is excessive and is not conducive to the prompt disposition of labor disputes. Mr. Justice BLACK in his dissenting opinion to *Smith v. Evening News Asso., supra,* pointed out the problems that might arise by the supreme court's holding that the jurisdiction of sec. 301 suits was not pre-empted by the NLRB:

"Instead, by permitting suits like this one to be filed, it is now not only possible but highly probable that unfair labor practice disputes will hang on like festering sores that grow worse and worse with the years." *Smith v. Evening News Asso., supra,* page 203.

Despite this admonition by Mr. Justice BLACK, the Congress has failed to enact a period of limitations applicable to sec. 301 suits, and the United States supreme court has not retreated from the position taken in *Smith.* We are not unmindful of the serious problems adumbrated by both respondents. There not only can be delay in the final disposition of sec. 301 (a) cases, but the applicable periods of limitations will vary from state to state. It would appear that Congress might well give further consideration to the enactment of periods of limitations to those portions of the LMRA that are not specifically covered in the statute.

*By the Court.*—The order of the court sustaining the demurrer is reversed, and the cause is remanded for the entry of an order overruling the demurrer.