Arthur MIKELSON, Plaintiff,

v.

WISCONSIN BRIDGE AND IRON COMPANY, a Wisconsin corporation, and Shopmen's Local 811 International Association of Bridge Structural and Ornamental Ironworkers, AFL–CIO, Defendants.

No. 70–C–159.

United States District Court, W. D. Wisconsin.

June 6, 1973.

Michael Wyngaard, of Aagaard & Wyngaard, Madison, Wis., for plaintiff.

Anthony S. Earl, of Crooks, Low & Earl, Wasau, Wis., for Shopmen's Local 811.

John P. Savage, of Davis, Kuelthau, Vergeront, Stover & Leichtfuss, Milwaukee, Wis., for Wisconsin Bridge & Iron Co.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil action commenced on June 17, 1970, under § 301 of the Labor Management Relations Act (29 U.S.C.

§ 185). Plaintiff seeks monetary relief from his former employer for discharging him improperly and from the labor union of which he was a member for failing to represent him adequately in the grievance proceeding arising out of his discharge. The defendant employer and the defendant union have moved for summary judgment, and it is these motions which are the subject of this opinion. On the basis of the allegations in the complaint admitted in both answers and of the allegations in the affidavits submitted by the parties, I find, for the purposes of this motion only, that there is no genuine issue as to the following material facts.

## FACTS

Plaintiff was employed by the defendant Wisconsin Bridge and Iron Company (WBI), a Wisconsin corporation whose principal business is the fabrication and erection of structural steel. In early 1968, WBI entered into a collective bargaining agreement with the defendant Shopmen's Local 811 (union), governing wages and working conditions of certain employees of WBI, including plaintiff, establishing the union as the exclusive bargaining agent for those employees, and creating a grievance procedure which is the exclusive means for the resolution of disputes between employees and WBI.

The grievance procedure provides that, should a dispute arise between the company and the union, the complaining party shall serve notice of the dispute on the other party within five work days from the date of the dispute. Within ten days of receipt of the notice, representatives of the union and company shall "make an earnest effort to settle such grievance or dispute." A three step procedure is prescribed for settlement efforts: (1) a conference among the complaining employee, the shop steward, and the plant manager; (2) a conference between the shop committee and a representative of the company; (3) a conference among a representative of the union, a representative of the company, and the shop committee. Following this final conference the company's representative is required to render a written decision which is final unless the union requests arbitration. The agreement provides further: "In the event a grievance or dispute between the Company and an employee(s) is not settled as provided for in Step 1 above, the grievance or dispute shall be reduced to writing, on forms furnished by the Company, and approved by the Union, and signed by the aggrieved employee or the Departmental or Chief Shop Steward."

Plaintiff was employed by WBI as a truck driver. On May 8, 1968, WBI terminated that employment. On May 11, 1968, John J. Anny, a representative of the union, received a letter from plaintiff informing Anny of the termination. On May 13 plaintiff prepared a written grievance which was presented to the company in a meeting between the shop committee and Donald Wirth, the plant manager. Anny met with Wirth and with another company representative, Luther Royce, on May 14. At that meeting Anny learned that the plaintiff had been discharged for padding his time sheet and drinking on the job. On the same day Anny spoke with the plaintiff, who denied the charges against him. On May 15 Wirth prepared the company's written decision denying the grievance. At the regularly scheduled meeting of the union on May 21, 1968, Anny was requested to investigate the matter further. Anny made further inquiries, which revealed that plaintiff had been instructed in the proper method of filling out time sheets. At the regularly scheduled meeting of the union on June 18, 1968, Anny presented his findings to the membership, which voted not to take the grievance to arbitration.

## OPINION

Defendants have moved for summary judgment on the grounds that this action is barred by the statute of limitations

and that plaintiff has failed to exhaust his remedies under the grievance procedure. The defendant union advances the additional ground that under the undisputed facts it is entitled to judgment on the merits.

### 1. Statute of limitations

■ Since Congress did not provide a limitations provision for suits commenced under § 301, the timeliness of such suits is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations. Auto Workers v. Hoosier Corp., 383 U.S. 696, 701–705, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). There are two Wisconsin statutes which might pertain to this action. Wis.Stat. § 893.21(5) (1971) provides a two-year limitation for any "action to recover unpaid salary, wages or other compensation for personal services. . . ." Wis.Stat. § 893.19(3) (1971) provides a six-year limitation for an "action upon any other contract, obligation or liability, express or implied. . . ." If the two-year statute governs this action, the suit will be barred since it accrued at the latest on June 1, 1968 (the day after the last day in which the union could demand that plaintiff's grievance be submitted to arbitration) and this suit was filed on June 17, 1970.

■ In a case comparable in all material respects the Wisconsin Supreme Court held § 893.19(3) to be the appropriate statute. Cheese v. Afram Brothers Co., 32 Wis.2d 320, 327, 145 N.W.2d 716 (1966). See also Tully v. Fred Olson Motor Service Co., 27 Wis.2d 476, 486–489, 134 N.W.2d 393 (1964). While I am not bound by that holding since this is a question of federal law, I conclude in the interest of uniformity and for the reasons set forth in *Cheese* and *Tully* that § 893.19(3) should govern this case. Since that statute provides a six-year limitation, it does not bar this suit.

### 2. Exhaustion of remedies

■ When a collective bargaining agreement makes the union the exclusive bargaining agent for the employees, federal law requires an employee with a grievance to attempt use of the contract grievance procedure before commencing an action in court. "[T]here can be no doubt that the employee must afford the union the opportunity to act on his behalf." Republic Steel v. Maddox, 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed. 2d 580 (1965); *see* also Vaca v. Sipes, 386 U.S. 171, 184–185, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The issue in the present case is whether the plaintiff has satisfied this obligation imposed upon him by *Republic Steel*.

Within five days after his termination the plaintiff sent a letter to his union representative, informing him of the termination, and prepared a written grievance, which was presented to the company. Defendants do not contend that the plaintiff failed to attend any meetings designed to resolve the dispute at which his attendance was required. Thus plaintiff did all that was required of him by the collective bargaining agreement to initiate the grievance procedure and to cooperate in the first three steps of that procedure. It may be that *Republic Steel* requires no more of a person in plaintiff's position since it states that the union need only be afforded "the opportunity to act" on the employee's behalf. However, I need not determine the reach of *Republic Steel* since I have determined that the plaintiff has met the highest burden which the exhaustion requirement might impose upon him: that of cooperating and participating in the contractual grievance procedure until all avenues for relief have been fully pursued.

■ In their briefs defendants urge that plaintiff failed to exhaust his remedies because he never requested arbitration and because he "did not set forth in writing a desire to have the matter proceed further." However, the grievance procedure requires plaintiff to do neither of these things. The agreement provides that once the three initial steps of the grievance procedure have been com-

pleted, either of the "parties" to the agreement may request arbitration. Since only the union and the company are parties to the agreement, the plaintiff had no power to commence arbitration. It might be argued that he should be required to make his desire for arbitration known to the union. However, such a requirement would be an empty ritual in a case such as this one where it was apparent that the union was carefully exploring the question whether arbitration should be requested. At its meeting of May 28, 1968, the union membership voted to have the matter investigated further, and only after learning the results of that investigation did the membership decide that arbitration should not be requested. Finally, the collective bargaining agreement nowhere requires an aggrieved employee to "set forth in writing a desire to have the matter proceed further" once the initial three steps of the grievance procedure have been completed. On the basis of the present record, therefore, I cannot conclude that plaintiff has failed to exhaust the remedies provided him by the grievance procedure.

### 3. The merits

The union urges that the undisputed facts show that it is entitled to judgment on the merits as a matter of law. In Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Court stated that a union which is the exclusive bargaining agent for its employees has a statutory duty fairly to represent all of its employees. A breach of that duty occurs "when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. at 916. There is nothing in the present record upon which I can base a decision whether the union's failure to take plaintiff's case to arbitration constitutes conduct which is arbitrary, discriminatory, or in bad faith. Therefore the defendant union is not entitled to judgment on this ground.

Accordingly, it is hereby ordered that the motions for summary judgment filed by the defendant union and the defendant company are denied.