**SMITH STEEL WORKERS, directly affiliated Local Union 19806, AFL–CIO, Plaintiff,**

v.

**A. O. SMITH CORPORATION, Defendant,**

and

**National Labor Relations Board, Intervenor-Defendant.**

No. 67–C–295.

United States District Court
E. D. Wisconsin.

June 28, 1968.

Kenneth R. Loebel and Alan M. Levy, Milwaukee, Wis., for plaintiff.

Herbert P. Wiedemann and John W. Brahm, Milwaukee, Wis., for defendant; Foley, Sammond & Lardner, Milwaukee, Wis., of counsel.

Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Solomon I. Hirsh and Robert Giannasi, Attys., N. L. R. B., Washington, D. C., and William C. Humphrey, Regional Atty., N. L. R. B., Milwaukee, Wis., for intervenor-defendant.

## DECISION AND ORDER ON MOTIONS

REYNOLDS, District Judge.

### Matters for Decision

Before this court are several motions. Plaintiff, Smith Steel Workers, Directly Affiliated Local Union 19806, AFL–CIO, has moved for summary judgment in its favor. Defendant, A. O. Smith Corporation, and an intervenor-defendant, the National Labor Relations Board, have joined in motions (1) to dismiss plaintiff's complaint for want of jurisdiction and (2) for summary judgment on their behalf. These motions raise similar questions of law, so they may be dealt with together. Since the background of this case, both procedural and factual, is quite complicated, it will be necessary to state the facts at some length.

### Facts

On September 13, 1967, plaintiff (hereinafter referred to as the "Union") filed its original complaint with this court. The complaint alleged violation of a collective bargaining agreement by defendant (hereinafter referred to as the "Company") and sought court enforcement of the agreement pursuant to § 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a). Specifically, the Union requested the court to compel the Company to submit to arbitration of a certain Union Grievance. The complaint alleged that the Company had refused to arbitrate the grievance and that the Company was required to do so by provisions of the collective bargaining agreement.

The root of the Union's grievance with the Company was an inter-union dispute between the Union and the Technical Engineers Association (hereinafter referred to as "TEA"). This dispute was one of those troublesome ones on the borderline between a "work assignment" dispute and an "appropriate bargaining unit" dispute. TEA claims that certain employees represented by the Union were doing TEA's work, and the Union contends that these workers were part of an appropriate bargaining unit historically and properly represented by it.

For many years the Union had bargained for the categories of employees in dispute, namely, "Experimental Workers A" and "Experimental Workers B." Nevertheless, the dispute between the Union and the TEA seems to have boiled beneath the surface for much of that period with recurrent eruptions. Since May 1966, the problem has grown espe-

cially acute. On September 1, 1966, the Union and the Company entered into a collective bargaining agreement, which is in force at this time, covering the categories of workers in dispute. By no means, however, did this agreement resolve the controversy, and discussions of the subject, sometimes heated, have continued intermittently up to the present time.

In January 1967, the National Labor Relations Board's regional office was invited to participate in resolving the dispute. A series of hearings, postponements, arguments, and discussions between the Union, the TEA, the Company, and the Board followed. On July 25, 1967, the Board issued a "unit clarification order," designated as 166 N.L.R.B. No. 98, providing that employees classified as Experimental Workers A and Experimental Workers B were to be included in the bargaining unit represented by TEA and excluded from the one represented by the Union.

On August 9, 1967, the Company notified the Union, the TEA, and all affected employees that henceforth, in accordance with the Board's order, it would recognize TEA as the bargaining agent for the employees in question. Taking the position that the Board's order and the Company's decision interfered with its rights under an existing collective bargaining agreement, the Union contended that it had an arbitrable "grievance" within the meaning of that agreement. On August 29, 1967, the Union demanded that the question of representation be submitted to arbitration pursuant to its agreement with the Company. Relying on the Board ruling, the Company refused to submit to arbitration.

On September 13, 1967, the Union filed a complaint with this court under § 301(a) of the Labor Management Relations Act, 1947, as amended, 29 U.S.C. § 185(a), requesting that the court compel arbitration. On October 4, 1967, the Company filed its answer, and on October 23, 1967, the Union moved for summary judgment in its favor. On No-

vember 9, 1967, the Board requested leave to intervene in this action and also moved for summary judgment in favor of the Company. After the Company indicated that it would join in the Board's motion, all motions were set for hearing on November 30, 1967.

At that hearing, this court ruled that the Board could intervene and argue in this suit. After this ruling, the Union requested leave to amend its complaint in view of the participation of the Board in this suit, and leave was granted. Then the court announced that it would defer decision on the summary judgment motions until the Union had amended its complaint and amended answers had been filed.

On December 18, 1967, the Union filed its amended complaint. This complaint incorporated by reference the earlier complaint. It further alleged that the Board's unit clarification decision was "promulgated upon improper procedure and it was arbitrary and not supported by substantial evidence," and that the Board had acted in excess of its statutory authority and in violation of the express language of § 8(d) of the Labor Management Relations Act, as amended, 29 U.S.C. § 158(d). For relief, the Union requests this court (1) to nullify the Board's unit clarification order, and (2) to compel the Company to arbitrate the representation question with the Union that is at the core of the controversy.

On January 5, 1968, the Company filed an answer to the Union's complaint. On January 9, 1968, the Board moved to dismiss the Union's amended complaint. This motion and the two motions for summary judgment are now before this court.

However, this is not the only forum in which the parties are litigating. On September 14, 1967, the day after the Union filed its complaint in this suit, the Board's Regional Director issued a complaint against the Union in accordance with Board procedures, alleging in substance that the Union had committed an unfair labor practice by attempting

to force the Company to arbitrate the representation question at issue, contrary to the express unit clarification order of the Board. On November 7, 1967, a hearing on this charge was held before a trial examiner of the Board. At the most recent hearing in this case, the court was informed that the trial examiner had found the Union guilty of an unfair labor practice. The trial examiner ruled that the Union, by attempting to compel the Company to arbitrate a matter settled by Board decision, had been guilty of bad faith bargaining contrary to § 8(b) (3) of the Labor Management Relations Act. The Union is appealing this decision to the National Labor Relations Board in Washington. The parties appear to agree that the Board's final decision will be taken to the United States Court of Appeals for the Seventh Circuit. It also seems to be agreed that the Board's final decision must resolve, if not set to rest, the underlying inter-union controversy about who should act as bargaining agent for Experimental Workers A and B.

### Issues

Essentially, the motions before this court raise two issues which may be dealt with separately:

1. Does a federal district court, on the facts of this case, have jurisdiction to set aside a "unit clarification order" of the National Labor Relations Board?

2. If not, may a district court enforce a collective bargaining agreement so as to compel the parties to act in a manner apparently contrary to a Board order defining a bargaining unit?

In the view of this court, the answer to both questions is "No."

Because resolution of the two essential issues raises different problems of law, they will each be dealt with independently.

1. *Does a federal district court, on the facts of this case, have jurisdiction to set aside a "unit clarification order" of the National Labor Relations Board?*

■ Under the normal scheme of things, a Board order, especially an order dealing with bargaining unit certification, is not directly reviewable by the federal district courts. Review of a Board order is generally obtained through review in a Court of Appeals of an unfair labor practice determination and order under 29 U.S.C. § 159(d). This general rule is, however, subject to some very narrowly drawn exceptions.

Leedom v. Kyne, 358 U.S. 184, 79 S. Ct. 180, 3 L.Ed.2d 210 (1958), for example, allowed a federal district court to set aside a Board order which was made contrary to express statutory requirements. The Board in the *Leedom* case had included professional employees in a bargaining unit without taking a vote among those professional employees. Such action was expressly prohibited by § 9(b) (1) of the Labor Management Relations Act, 29 U.S.C. § 159(b) (1). The language of the court in the *Leedom* case, supra, at 185, 79 S.Ct. at 182, indicates the narrow scope of the review being allowed:

"* * * The sole and narrow question presented is whether a Federal District Court has jurisdiction of an original suit to vacate that determination of the Board because made in excess of its powers."

The Union in this action contends that the Board has again acted in excess of its authority by making a unit clarification during the life of a collective bargaining contract. None of the statutes cited to this court by the Union, however, contain an express prohibition of such action. Section 8(d) of the Act, 29 U.S.C. § 158(d), is binding only on the parties to the collective bargaining agreement; it is *not* expressly binding on the Board. Thus, the case currently before the court is not an action "* * * to strike down an order of the Board made in excess of its delegated powers and contrary to a *specific prohibition* in the Act." (Emphasis added.) Leedom v. Kyne, 358 U.S. 184, 188, 79 S.Ct. 180, 184 (1958). Consequently, the Union

has not brought itself within the purview of the *Leedom* holding.

A factor of apparent significance in the *Leedom* holding was the lack of another method by which review could be obtained. In the case at bar, however, the Union is already in the process of obtaining review of the Board order in another and more appropriate forum through the mechanism of an unfair labor practice proceeding. Consequently, the equities favoring review by the district court in the Leedom v. Kyne case, supra, are not present in the case currently before the court.

The limited scope of district court review is emphasized by further limitation of the *Leedom* holding in Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964). In *Boire*, the National Labor Relations Board had certified a bargaining unit and ordered an election. Greyhound asked the federal district court to enjoin the election on the grounds that the evidence was insufficient to establish that Greyhound was the employer of the individuals involved. The Supreme Court held that the district court did not have jurisdiction to review, since a final order of the Board was not involved, and, further, that the appropriate forum in which to challenge the Board decision was through review of an unfair labor practice determination in the Court of Appeals. The court specifically distinguishes the *Boire* situation from that in Leedom v. Kyne, supra, and discusses the policy basis of the *Kyne* decision as follows:

> " * * * The *Kyne* exception is a narrow one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law. Judicial review in such a situation has been limited by Congress to the courts of appeals, and then only under the conditions explicitly laid down in § 9(d) of the Act."

Boire v. Greyhound Corp., 376 U.S. 473, 481–482, 84 S.Ct. 894, 899 (1964).

In the case at bar, the policy expressed in *Boire* of discouraging district court review of Board certification orders would appear even more compelling. The parties in the instant case are already pursuing the approved method of review in such situations—unfair labor practice charges growing out of conduct pursuant to the Board order are being litigated.

Indeed, the case upon which plaintiff has most heavily relied to support his petition has recently been overruled by the Court of Appeals for the District of Columbia. McCulloch v. Libbey-Owens-Ford Glass Co. (D.C.Cir., June 7, 1968), concludes that the federal district court is without jurisdiction to review admittedly novel actions taken by the Board involving an appropriate unit for bargaining. In the *Libbey-Owens-Ford* case, although there was no representation question, the Board determined that an appropriate unit for bargaining was one unit composed of all ten plants of the defendant. Defendant sought an injunction to bar the election to be held in the two plants of defendant which had not been previously included in the bargaining unit, although all employees had been represented by the union involved. The Court of Appeals expressly rejects the contention that district court review in this instance is within the scope of the Leedom v. Kyne decision and delineates the circumstances in which district court review may be obtained, stating:

> "Judicial review of representation proceedings is very limited. Ordinarily it must await an appeal from an unfair labor practice order. 29 U.S.C. § 159(d) (1958). A District Court may enjoin Board action, especially representation proceedings, only under highly exceptional circumstances. It may correct a Board violation of a 'clear, specific and mandatory provision of the Act.' * * * It may enjoin threatened Board action which violates the Constitution. * * * Since

Congress expressly restricted judicial review in order to prevent delay in certification and to expedite the settlement of labor disputes, the showing that the Board has violated the Act or deprived a plaintiff of constitutional rights must be strong and clear." McCulloch v. Libbey-Owens-Ford Glass Co. (D.C.Cir., June 7, 1968).

■ This court believes that the reasoning of the Court of Appeals of the District of Columbia is applicable here since the Union has failed to make a "strong and clear" showing of a violation of the Act by the Board or deprivation of its constitutional rights. Thus, this court lacks jurisdiction to set aside the Board's "unit clarification order" here challenged. However, since the suit here is technically to enforce a contract, another question remains to be resolved.

2. *May a district court enforce a collective bargaining agreement so as to compel the parties to act in a manner apparently contrary to a Board order defining a bargaining unit?*

In the view of this court, this question was resolved in this circuit in Retail Clerks International Association AFL–CIO v. Montgomery Ward & Co., 316 F.2d 754 (7th Cir.1963). The *Montgomery Ward* case involved a suit by the union pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1947), to enforce a collective bargaining agreement which gave exclusive recognition to plaintiff union. During the life of the contract, however, the union had been decertified by the National Labor Relations Board. The Board intervened and moved for dismissal for want of jurisdiction or, in the alternative, for summary judgment in favor of the defendant. The district court denied the motion to dismiss but granted the Board's motion for summary judgment in favor of defendant. The Court of Appeals affirmed. The court recognized that an implied condition of collective bargaining agreements is the continuance of the union as the certified representative of the employees involved. Consequently, the court concluded that:

" * * * Any right to recognition as bargaining agent, which the plaintiff unions secured by virtue of their contracts, ceased and became inoperative on decertification. * * *" Retail Clerks International Association AFL–CIO v. Montgomery Ward & Co., 316 F.2d 754, 757 (1963).

■ The facts in the case at bar are substantially similar to those presented in *Montgomery Ward*. The Union here did not lose a decertification election. It did, however, lose two classifications of employees from the unit it represents when the Board determined that those classifications properly belonged to the unit represented by TEA. The determination was made on the basis of petitions filed by the Union, the TEA, and the defendant Company. Plaintiff now seeks to enforce a contract which would require defendant Company to take action directly contrary to a Board determination. Neither the policy of the Labor Management Relations Act nor prior court decisions support plaintiff's position.

This court does not believe the policy of the Labor Management Relations Act could be served by compelling arbitration of a question *already decided* by the Board.

For the foregoing reasons,

It is ordered that plaintiff's motion for summary judgment must be and the same hereby is denied.

It is further ordered that the motions for summary judgment of the defendant, A. O. Smith Corporation, and the intervenor-defendant, National Labor Relations Board, be and the same hereby are granted.