INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), LOCAL UNION NO. 577, Appellant, v. HAMILTON BEACH MANUFACTURING COMPANY, Respondent.

*No. 31. Argued September 30, 1968.—Decided October 29, 1968.*
(Also reported in 162 N. W. 2d 16.)

For the appellant there was a brief by *Zubrensky, Padden, Graf & Bratt* of Milwaukee, and oral argument by *Herbert S. Bratt.*

For the respondent there was a brief by *Brach & Wheeler* of Racine, and oral argument by *Fred W. Wheeler.*

BEILFUSS, J. Although the company has not moved to review, upon this appeal, in support of its position that the complaint does not state facts sufficient to constitute a cause of action, it does contend that the court does not have jurisdiction.

The complaint specifically sets forth that "this action is brought pursuant to Section 301 of the National Labor Relations Act."

Sec. 301 (a) (29 USCA, sec. 185), provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

We agree the court has no jurisdiction insofar as the complaint seeks damages. In *Local Lodge 2040, International Asso. of Machinists v. Servel, Inc.* (7th Cir. 1959), 268 Fed. 2d 692, certiorari denied, 361 U. S. 884, 80 Sup. Ct. 155, 4 L. Ed. 2d 120, a case of plant closing and complaint demanding a money judgment and declaratory relief, the court held that it could come to no other conclusion but that the action was one for the recovery of individual benefits due employees and, as such, was not within the scope of sec. 301 (a).[1] However, in this action the union primarily seeks a restraining order based upon an alleged violation of its agreement with the company. As to this phase of the union's claim it is our opinion that the courts, both federal and state, do have jurisdiction by virtue of sec. 301 (a).

The trial court was of the opinion that the complaint did not state a cause of action because (1) there was a total absence of any language alleging the employer acted pursuant to an unfair labor or antiunion motive, and (2) there was no provision in the collective bargaining agreement prohibiting the removal of the facilities from Racine.

[1] *Employees v. Westinghouse Corp.* (1955), 348 U. S. 437, 75 Sup. Ct. 489, 99 L. Ed. 510.

In *Tully v. Fred Olson Motor Service Co.* (1965), 27 Wis. 2d 476, 484, 134 N. W. 2d 393, we stated that "[a] cause of action brought under sec. 301 (a) of the LMRA is within the jurisdiction of the state courts as well as the federal courts. Their jurisdiction in respect to these causes of action is concurrent. *Dowd Box Co. v. Courtney* (1962), 368 U. S. 502, 82 Sup. Ct. 519, 7 L. Ed. (2d) 483." The controlling aspect of the action is that it is a suit for a violation of the contract between the company and the labor organization representing the employees. This is true even though the alleged conduct of the company may also be an unfair labor practice within the jurisdiction of the National Labor Relations Board. *Tully, supra,* at page 484, quoting *Smith v. Evening News Asso.* (1962), 371 U. S. 195, 197, 83 Sup. Ct. 267, 9 L. Ed. 2d 246. *Tully* also makes it clear that our state court must apply the federal law if there is a conflict.

From a reading of the complaint, and from its brief, it is apparent that the union has based this action upon a breach of the collective bargaining agreement and not upon any violation of the National Labor Relations Act. It is true that plant removal, where there is a showing of antiunion motivation, may be an unfair labor practice. *See* 31 Am. Jur., *Labor,* p. 564, sec. 228; 5 A. L. R. 3d 733. A valid cause of action under sec. 301 is not dependent upon an allegation of an unfair labor practice. It may or may not; it makes no difference. The essential allegations must be based upon a violation of the contract.[2] Where the plant is relocated because of a legitimate business reason, the relocation, though not constituting an unfair labor practice, could be a breach of contract if it violates the provision of the contract.

It has been held that sec. 301 (a) creates a substantive right and remedy and that the plaintiff need not show bad faith on the part of the defendant. *Shirley-Herman*

[2] *Vaca v. Sipes* (1967), 386 U. S. 171, 87 Sup. Ct. 903, 17 L. Ed. 2d 842.

*Co. v. International Hod Carriers* (2d Cir. 1950), 182 Fed. 2d 806. The plaintiff must, of course, show the usual elements associated with simple contracts; for example, the necessity of consideration. *Byerly v. Duke Power Co.* (4th Cir. 1954), 217 Fed. 2d 803.

We do not therefore agree with the trial court if it was of the opinion that it was necessary that the complaint contain an allegation of an unfair labor practice.

The trial court concluded that there was no provision in the collective bargaining agreement which prohibited the removal of the manufacturing facility from Racine to some other state. The union contends that the company's activities will destroy it as a collective bargaining agent, contrary to the recognition and security clauses, that its members' seniority will be abolished despite the contract provisions establishing them, that a reduction in the scheduled working hours will be accomplished in a manner contrary to that agreed upon by the parties. It argues that a complaint which alleges a breach of an agreement not containing these provisions states a cause of action and that proof necessary to find an agreement to remove the plant can be supplied by extrinsic evidence of the history of the relationship of the parties and the negotiations leading up to the agreement.

The union cites *Steelworkers v. Warrior & Gulf Co.* (1960), 363 U. S. 574, 80 Sup. Ct. 1347, 4 L. Ed. 2d 1409, for the proposition that collective bargaining agreements should be broadly construed to cover matters not specifically stated:

"The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. . . .

" '. . . There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties. One cannot reduce all the rules governing a community like an industrial plant to fifteen or even fifty pages.

Within the sphere of collective bargaining, the institutional characteristics and the governmental nature of the collective-bargaining process demand a common law of the shop which implements and furnishes the context of the agreement. We must assume that intelligent negotiators acknowledged so plain a need unless they stated a contrary rule in plain words.' " (pp. 578, 579, 580.)

That case, however, concerned a suit by the union to compel arbitration of a grievance arising out of the employer's practice of contracting out work formerly done by the union employees. The employer had refused to arbitrate the dispute contending that the matter was not covered in the arbitration clause. The United States Supreme Court held that the grievance was not necessarily excluded from arbitration by the terms of the contract and since the grievance amounted to a difference as to the meaning and application of the contract provisions, arbitration was compellable. An important factor was that the agreement contained a no-strike clause and thus "in a very real sense everything management does is subject to the agreement."

*International Union, United Automobile v. Webster Electric Co.* (7th Cir. 1962), 299 Fed. 2d 195, also concerned a contracting out situation. There the court found that Webster, in contracting out work, had breached its agreement with the union even though there was no specific provision prohibiting such conduct. But contracting out work with an eye to reducing the union labor force is no different than firing union employees and hiring nonunion help at a reduced wage scale. Such conduct goes directly to the heart of union shop agreements and is clearly distinguishable from plant removal situations.

Even if the union's contention that extrinsic evidence can be introduced to permit a finding of an agreement not to move the plant on the part of the company, there are no allegations in the complaint nor in the agreement that in any manner allege the extent or existence of such extrinsic evidence.

"Rights of employees under a collective bargaining agreement presuppose an employer-employee relationship. A collective bargaining agreement, in ordinary usage and terminology, does not create an employer-employee relationship nor does it guarantee the continuance of one. Employees' rights under such a contract do not survive a discontinuance of business and a termination of operations." *Fraser v. Magic Chef-Food Giant Markets, Inc.* (6th Cir. 1963), 324 Fed. 2d 853, 856. And absent an express contractual provision, there is no prohibition against the defendant moving its operations out of the state. *Wimberly v. Clark Controller Co.* (6th Cir. 1966), 364 Fed. 2d 225.

In *Fraser, supra,* where the clause in the agreement did not specifically give the employer the right to discontinue operations and move, the court held that such omission did not mean that the right to move did not exist. A similar, though not as detailed a clause, was included in the contract before us. It follows that where the union recognition clause does not contain provisions guaranteeing continued existence and there is nowhere contained a clause prohibiting plant removal, the right to move has not been bargained away.

Plaintiff places much emphasis on the existence of the seniority provision of the contract. However, such rights are not vested or earned in the sense that they may not be terminated by discontinuance or removal of the business or cannot be bargained away by the union, *Oddie v. Ross Gear & Tool Co.* (6th Cir. 1962), 305 Fed. 2d 143, and these rights though not vested accrue by virtue of the contract, *Ingersoll v. Brotherhood of Locomotive Engineers* (6th Cir. 1962), 307 Fed. 2d 257.[3]

---

[3] The union cited *Zdanok v. Glidden Co.* (2d Cir. 1961), 288 Fed. 2d 99, as authority contrary to the *Oddie Case.* Subsequent to the preparation of the union's brief the same court, United States Court of Appeals (2d Cir.), on June 24, 1968, expressly overruled its prior opinion in *Auto Workers, Local 1251 v. Robertshaw Controls Co.,* 58 LC, Par. 12,779, and adopted the rationale of *Oddie, supra.*

The seniority provisions in the instant case list six ways in which seniority may be lost (sec. 10.08). Thus it can hardly be said to be vested.

A reading of the work reduction and severance pay provision in no way suggests that plant removal would constitute a breach of the agreement. In fact, it recognizes a possibility of complete plant shutdown.

The union, in its complaint, alleges the company made the determination to move its plant without permitting the same to be submitted to arbitration in violation of the agreement. Arbitration is a matter of contract and a party cannot be required to submit to arbitration a dispute which it has not agreed so to submit, and it is in the province of the court to determine on the basis of the contract whether or not the employer is bound to arbitrate. *Atkinson v. Sinclair Refining Co.* (1962), 370 U. S. 238, 82 Sup. Ct. 1318, 8 L. Ed. 2d 462.

The grievance procedure is set forth in Article 8:

"8.01 Any dispute which concerns the wages or hours or working conditions, and which arises out of the day to day operations shall be processed through the following procedure. It will become a grievance if not satisfactorily settled in the first step."

The three-step procedure is then outlined which establishes various meetings between labor and management and is concluded with:

"Should disagreement prevail following Step 3 of this procedure, the Union may request and the Company will grant a meeting for the purpose of discussing the matter. If necessary, a request for outside assistance such as Federal mediation, arbitration or specialized international representative will be considered to the end of solving the problem."

If the procedure did not result in a resolution of the dispute the union could, upon notice, strike. In addition, sec. 8.10 provides: "Matters which are not grievances

may be discussed at a meeting constituted as in Step 3 of this Article."

The parties have limited the grievance procedure to disputes arising out of the day-to-day operations. Plant removal is not such a dispute.

We must conclude that the allegations of the complaint and the provisions of the agreement, made a part of the complaint, even under a most liberal construction, do not state a cause of action to permit an injunction to restrain the company from removing its plant. The location of a manufacturing plant is inherently a prerogative of the company.

The removal of the plant can, in many instances, cause economic hardship to the employees. The fact that companies do move plants is a fact that in all probability is well known to the negotiators who prepare and enter into collective bargaining agreements. If the company's right to determine the location of its plant is to be forfeited or regulated it is a matter that can and should be done by express provision in the agreement.[4] There is nothing in the agreement before us that in any way prohibits plant removal.

The demurrer to the complaint must be sustained.

*By the Court.*—Order affirmed.

---

[4] *Briggs v. Electric Auto-Lite Co.* (1967), 37 Wis. 2d 275, 155 N. W. 2d 32.