**DOCK LOADERS AND UNLOADERS OF FREIGHT CARS AND BARGES, ILA LOCAL UNION NO. 854, as an entity and as the representative of all of its members affected herein, and Leonard Steib, Mack Hunt, John Dunbar and Ernest Dede, Plaintiffs,**

v.

**W. L. RICHESON & SONS, INC., Defendant.**

**Civ. A. No. 66-767.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 13, 1968.

Alvin B. Jones, Benjamin E. Smith, New Orleans, La., for plaintiffs.

Michael J. Molony, Jr., New Orleans, La., for defendant.

John W. Ormond, New Orleans, La., for General Truck Drivers, Chauffeurs, Warehousemen & Helpers, Local No. 270.

RUBIN, District Judge:

The defendant, W. L. Richeson & Sons, Inc. (Richeson), is engaged in the business of ocean freight forwarding. It handles shipments both for import and export. It employs members of both the General Truck Drivers, Chauffeurs, Warehousemen and Helpers Local No. 270 (The Teamsters) and the Dock Loaders and Unloaders of Freight Cars and Barges, ILA Local Union No. 854 (The ILA), and it has maintained a collective bargaining relationship with both unions for over ten years.

In addition to the many other phases of its business, Richeson handles the

shipment of large rolls of newsprint paper. In this operation, the newsprint rolls are imported into this country from Canada and Finland and discharged directly from ships onto the top floor of the Poydras Street Wharf on the river front in the City of New Orleans. This work is handled by members of the ILA employed by a stevedoring company. The paper is stored in the Poydras Street Wharf and delivered in small quantities as it is called for by the customers of the paper companies. The rolls of newsprint are shipped to customers of the companies for whom they are stored either by truck or rail car.

The work assignment in dispute in this case involves the movement of the rolls from the top floor of the Poydras Street Wharf to the trucks. Essentially, there are four separate operations involved in the movement of these paper rolls. Because of the size and weight of the rolls, they must be moved from their location on the second floor to the edge of an opening on the second floor by a forklift truck. The rolls are then hooked onto a crane and lowered by the crane operator onto the bed of the truck or rail car.[1] After the rolls are placed on the rail car or truck, they are unhooked from the crane by a Richeson employee. The basic dispute precipitating this litigation is whether the employees represented by the Teamsters or by the ILA should operate the forklift and hook and unhook the rolls of newsprint.

Prior to October, 1965, there was a ramp leading to the second floor of the defendant's facility and the rolls of newsprint were transported by forklift from the second floor storage area directly to the bed of the trucks. However, in October 1965, the ramp was removed

and the present method of loading was put into effect. Under both the old and the new systems of loading, the work in dispute has been performed principally by employees represented by the Teamsters.

After the change in operation, the ILA informed the defendant that it claimed the work of operating the forklift and hooking and unhooking the rolls.

When the ILA claim was rejected, it filed a grievance pursuant to its collective bargaining agreement with the defendant.[2] This resulted in a determination by the grievance committee awarding the operation of the forklift and the hooking operation to the ILA.[3]

After the award was made, the ILA filed suit in State court alleging that the defendant had violated its collective bargaining agreement with the ILA by refusing to assign the disputed work to its members. Then plaintiffs[4] filed this action under Section 301 of the Labor-Management Relations Act of 1947[5] alleging that the defendant had breached its collective bargaining agreement with the ILA by assigning these jobs to members of the Teamsters, and by refusing to remove members of that union from the disputed jobs and to replace them with members of the ILA pursuant to the grievance committee decision. The plaintiffs sought damages and a preliminary injunction ordering the defendant to assign the disputed work to the ILA.

On February 28, 1967, the defendant advised the Teamsters that in order to protect itself from any liability arising out of the suit pending in this Court, the defendant would not employ Teamsters members to perform the disputed

1. The crane is operated by an employee of Ryan Stevedoring Co., Inc. The operation of this crane is not in dispute.

2. The defendant is a member of the New Orleans Steamship Association, which bargains with the ILA on an association-wide basis.

3. The Teamsters are not a party to this collective-bargaining agreement and did

not participate in the grievance proceeding.

4. Plaintiffs are the ILA and certain of its members, who are suing "individually and as the representatives of all of the members of [the ILA]. * * *"

5. 29 U.S.C.A. § 185(a).

work after March 10, 1967. On March 2, 1967, the Teamsters replied by notifying the defendant that they continued to claim the disputed work and that, in support of this claim, the union had filed a grievance under its contract with the defendant. On March 6, 1967, the Teamsters sent a telegram to the defendant stating that if the Teamsters members were not permitted to continue performing the disputed work, the union would strike and picket as of March 13, 1967. Thereafter a Section 10(l) [6] injunction proceeding was instituted in this Court; this resulted in a stipulation by the parties not to engage in acts of picketing pending the outcome of the litigation.

In the meantime, on March 7, 1967, the defendant filed an unfair labor practice charge with the National Labor Relations Board (N.L.R.B.) alleging that there was a jurisdictional dispute within the meaning of Section 8(b) (4) (ii) (D) of the National Labor Relations Act. A Section 10(k) [7] hearing was held, and, on August 1, 1967, the N.L.R.B. issued its decision awarding the work to the Teamsters. The defendant then brought the present motion "to dismiss and/or for summary judgment." It contends that (1) the N.L.R.B. decision takes precedence over the result reached by the grievance committee, and (2) since the defendant's work assignment was in accordance with the N.L.R.B. decision, it is not liable for damages under Section 301.

The defendant asserts, and the plaintiffs concede, that the N.L.R.B. determination of the work assignment dispute is a final decision for purposes of determining whether the defendant's motion is premature. The Court agrees. Any other conclusion would lead to the anomalous result of allowing the losing party in the 10(k) proceeding to prevent the employer from reaping the full benefit of that proceeding, since review of the 10(k) decision can be had only if the losing union commits an unfair labor practice[8]—an event entirely within the control of the losing union. Therefore, I turn now to a consideration of whether the action of the N.L.R.B. in awarding the disputed work to employees of the defendant represented by the Teamsters bars an award of damages to the plaintiffs.[9]

There would seem to be no question that, as between a grievance committee award of disputed jobs to certain employees and a conflicting N.L.R.B. allocation of the same jobs to different employees, the later takes "precedence." New Orleans Typographical Union No. 17 v. N.L.R.B., 5 Cir., 1966, 368 F.2d 755, 767. However, the issue before this Court is whether deference to the "precedence" given a N.L.R.B. decision requires more than that, after a N.L.R.B. decision inconsistent with a prior grievance committee award, the jobs in dispute be assigned to the employees designated by the N.L.R.B.: Does that "precedence" also require the Court to deny damages under Section 301, accruing prior to such a N.L.R.B. decision, to a union whose members were not assigned the disputed jobs despite a grievance committee award requiring such an assignment?

Counsel have cited the Court no case that deals explicitly with this question. However, the language used by the United States Supreme Court in Carey v. Westinghouse Electric Corporation, 1964, 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320, suggests that an action for damages

---

6. 29 U.S.C.A. § 160(*l*).

7. 29 U.S.C.A. § 160(k).

8. N. L. R. B. v. International Longshoremen's & Warehousemen's Union, 9 Cir., 1967, 378 F.2d 33; N. L. R. B. v. Local 991, International Longshoremen's Association, 5 Cir., 1964, 332 F.2d 66.

9. The plaintiffs no longer assert their demand for an injunction ordering defendant to employ members of the ILA in the disputed jobs. In this regard, see New Orleans Typographical Union No. 17 v. N. L. R. B., 5 Cir., 1966, 368 F.2d 755.

by the ILA, in the face of an award of the disputed work to the Teamsters by the N.L.R.B., is barred.

In the *Carey* case Westinghouse and the IUE had entered into a collective bargaining agreement under the terms of which Westinghouse agreed, *inter alia*, to recognize the IUE as the exclusive bargaining agent for "all production and maintenance employees" at a certain plant. The agreement also contained a grievance procedure authorizing the use of arbitration in case of unresolved disputes involving claimed violations of the agreement. The IUE filed a grievance asserting that Westinghouse was employing persons not represented by the IUE to do production and maintenance work. When Westinghouse refused to arbitrate, the IUE sought an order from the New York courts compelling arbitration. The New York courts refused. The United States Supreme Court granted certiorari and reversed. In doing so, it discussed the effect of a conflict between an arbitration award and a later N.L.R.B. decision in the following language:

> "Should the Board disagree with the arbiter by ruling, for example, that the employees involved in the controversy are members of one bargaining unit or another, the Board's ruling would, of course, take precedence; and if the employer's actions had been in accord with that ruling, it would not be liable for damages under § 301." 375 U.S. at 272, 84 S.Ct. at 409.

The quoted language, of course, is dicta, for the specific issue before the Court in *Carey* was only whether arbitration could be compelled. However, in the absence of authority to the contrary, or of persuasive reasons for reaching the opposite result, the language of the Supreme Court commands respect.

Plaintiffs have cited no authorities reaching a result contrary to that suggested by the Supreme Court. However, they have argued that:

> "To read *Carey* as [holding that the N.L.R.B.'s decision precludes a suit for damages sustained "prior to the work award"] would operate to establish a rule which makes compliance with labor agreements optional with the parties and does violence to the policy considerations of the Act as announced in *Lincoln Mills* and the established jurisprudence thereunder."

This argument fails to take adequately into account the Congressional policy enunciated in Section 10(k) that makes the statutory jurisdictional dispute procedure take precedence over contractual arbitration. If the parties were free to race to the forum, one to the arbitrator and the other to N.L.R.B., there is the counter risk that the party who successfully reached arbitration first would imperil the effectiveness of the statutory remedy by making an employer liable in damages even when his position had been correct under the standards considered appropriate by the N.L.R.B. pursuant to its statutory mandate. National policy indeed encourages arbitration, as *Lincoln Mills* clearly holds. National policy also requires the resolution of jurisdictional disputes under Section 10(k). Full reach cannot be given to both remedies. And it would be inconsistent to subject the party whose cause has prevailed in a final judgment under a statutory procedure to liability for damages occasioned while it was seeking its statutory remedy. Therefore, in the light of *Carey*, I must conclude that damages may not be recovered here. The motion for summary judgment is therefore

Granted.