**1012**

INTERNATIONAL LONGSHOREMEN'S
AND WAREHOUSEMEN'S UNION,
LOCAL 32, Plaintiff-Appellant

v.

PACIFIC MARITIME ASSOCIATION
and Crescent City Marine Ways and
Drydock Company, Inc., Defendants-
Appellees,

and

National Labor Relations Board,
Intervenor Appellee.

LOCAL 32, INTERNATIONAL LONG-
SHOREMEN'S AND WAREHOUSE-
MEN'S UNION, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

NATIONAL LABOR RELATIONS
BOARD, Cross-Petitioner,

v.

LOCAL 32, INTERNATIONAL LONG-
SHOREMEN'S AND WAREHOUSE-
MEN'S UNION, Cross-Respondent.

Nos. 84–4173, 84–7544 and 84–7646.

United States Court of Appeals,
Ninth Circuit.

Oct. 7, 1985.

Richard Z. Zuckerman, Leonard & Carder, San Francisco, Cal., for plaintiff-appellant.

Margery E. Lieber, Eric G. Moskowitz, Washington, D.C., Pat Wynns, Dean T. Zografos, William & Zografos, Seattle, Wash., for defendants-appellees.

Before WALLACE, FARRIS and HALL, Circuit Judges.

FARRIS, Circuit Judge:

In No. 84–7544, Local 32 seeks review of the NLRB's order that the union cease its attempts to enforce an arbitrator's award. The arbitrator had awarded "time-in-lieu" payments against Jones Washington and Crescent City for work which the NLRB had already assigned to non-Local 32 workers. In No. 84–7646, the NLRB cross-applies for enforcement of its work assignment order, reported at 271 N.L.R.B. No. 123 (1984). In No. 84–4173, the union appeals the decision of the United States Dis-

trict Court for the Western District of Washington, which denied Local 32's motion to confirm the arbitration award.

Local 32 and the Pacific Maritime Association, an employer group, agreed that PMA members would employ exclusively Local 32 workers to perform certain longshoring activities. Two members of PMA, Crescent City and Jones Washington, were subsequently hired by Weyerhaeuser to move goods from shipside onto ships berthed at Weyerhaeuser's dock facility in Everett, Washington. The remainder of longshoring work, including handling lines and moving goods from warehouse to shipside, was performed by Weyerhaeuser's own employees—who were members not of Local 32, but of the Association of Western Pulp and Paper Workers.

About December 12, 1980, Weyerhaeuser closed its Thermo-Mechanical Mill adjacent to the Everett dock. Local 32 claimed that upon the closing of the Mill, the union's contract with Jones Washington and Crescent City required the companies to order Local 32 members to perform the longshoring tasks previously performed by Weyerhaeuser's AWPPW workers. To press its claim, on December 21 Local 32 engaged in a 45-minute work stoppage at the dock.

The resulting work dispute between Local 32 and AWPPW became the subject of both NLRB and arbitration proceedings. On December 29, Weyerhaeuser filed a charge with the NLRB, alleging that Local 32 had committed an unfair labor practice in violation of section 8(b)(4)(ii)(D) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4)(ii)(D). The charge alleged that Local 32 had illegally engaged in a "secondary" work stoppage which, while directed immediately at Jones Washington, had the underlying purpose of forcing Weyerhaeuser to assign the AWPPW's longshoring activities to Local 32 workers. The NLRB awarded the disputed work to the AWPPW in a proceeding under section 10(k) of the NLRA, 29 U.S.C. § 160(k), and after Local 32 agreed to comply, the NLRB dismissed Weyerhaeuser's unfair labor practice charges.

Concurrent with these proceedings, the same dispute was moving through the grievance-arbitration mechanism provided for by the collective bargaining agreement between Local 32, Crescent City, and Jones Washington. An arbitration hearing was held prior to the NLRB's section 10(k) decision, but it was not until four months *after* the NLRB's section 10(k) decision that the arbitrator ruled that Local 32 employees should have been ordered to perform the AWPPW's stevedoring tasks. The arbitrator awarded Local 32 "time-in-lieu" payments for the work done by AWPPW, as damages for Crescent City and Jones Washington's alleged breach of their collective bargaining agreements.

Local 32 sought enforcement of the arbitration award by filing "payment-in-lieu" grievance claims and bringing suit under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). The district court denied enforcement of the arbitration award, finding that it conflicted with the NLRB's prior section 10(k) decision.

Reacting to the union's section 301 suit to enforce the conflicting arbitration award, the NLRB reinstated Weyerhaeuser's unfair labor practice charge on October 23, 1981, and determined that Local 32's filing of "payment-in-lieu" claims and a section 301 suit constituted 1) a failure to comply with the Board's section 10(k) decision, and 2) a section 8(b)(4)(ii)(D) unfair labor practice in itself. Local 32 timely files a petition for review of the NLRB's decision and appeals the district court's refusal to confirm the arbitration award. The NLRB's cross-application for enforcement was consolidated in this appeal. We have jurisdiction under 29 U.S.C. § 160(e), (f).

The issue in Nos. 84–7544 and 84–7646 is whether a union's attempt to enforce an arbitration award which is inconsistent with a prior section 10(k) proceeding constitutes 1) an unfair labor practice under section 8(b)(4)(ii)(D) of the NLRA, or 2) a failure to comply with the Board's section 10(k) determination. Our resolution of this

issue is dispositive of Local 32's appeal in No. 84–4173.

## I. *Finding an unfair labor practice under* Bill Johnson's Restaurants.

### A. *Applying the* Bill Johnson's *test.*

■ In *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983), the Supreme Court held that an employer's prosecution of a retaliatory suit against picketing employees constitutes an unfair labor practice under section 8(a)(1) if the suit 1) is filed with an improper motive and 2) lacks a reasonable basis in law. *Id.* at 744, 103 S.Ct. at 2171; *see Sure-Tan, Inc. v. NLRB*, — U.S. —, 104 S.Ct. 2803, 2811, 81 L.Ed.2d 732 (1984). Although *Bill Johnson's* only involved a section 8(a)(1) retaliatory lawsuit, its language was sufficiently broad, *see* 461 U.S. at 744, 103 S.Ct. at 2171 ("the prosecution of an improperly motivated suit lacking a reasonable basis constitutes a violation of the Act that may be enjoined by the Board"), that the few decisions thus far applying *Bill Johnson's* have extended the holding beyond the section 8(a)(1) context. *See Local No. 355, Sheet Metal Workers' International Association v. NLRB*, 716 F.2d 1249, 1258–64 (9th Cir.1983) (applying *Bill Johnson's* to a section 8(b)(1) retaliatory suit brought by a union); *Local 1115, Nursing Home and Hospital Employees Union and Smithtown General Hospital*, 275 N.L.R.B. No. 45 at 9 (April 26, 1985) (applying *Bill Johnson's* to find that union violated section 8(b)(1)(A) by seeking to confirm arbitrator's award). We therefore employ *Bill Johnson's* improper motivation/reasonable basis test to determine whether the union committed a section 8(b)(4) unfair labor practice in seeking to enforce the arbitrator's award.

■ The Board held that the union's bringing of payment-in-lieu grievances and its filing of a section 301 suit to enforce the arbitrator's decision were "improperly motivated," 461 U.S. at 744, 103 S.Ct. at 2171, by a desire to circumvent the Board's section 10(k) decision and obtain the proceeds of work which the union was not entitled to perform. The Board further held that the second prong of *Bill Johnson's* was satisfied: the union's suit lacks a "reasonable basis" because the Board's section 10(k) determination precludes the arbitrator's contrary award of in-lieu payments. We must uphold these legal conclusions unless they are arbitrary and capricious. *NLRB v. United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry, Local 741*, 704 F.2d 1164, 1166 (9th Cir.1983).

### B. *Improper motivation—circumventing the section 10(k) determination.*

■ The Board's finding of an improper desire to circumvent the section 10(k) determination is not arbitrary and capricious. The union's attempt to obtain payment for work to which it is not entitled would, if successful, completely undermine the section 10(k) work assignment. *See International Association of Bridge, Structural & Ornamental Ironworkers, Local 395 v. Lake County, Indiana Council of the United Brotherhood of Carpenters et al.*, 347 F.Supp. 1377, 1382–84 (N.D.Ind.1972) (barring union's section 301 claim and rejecting union's argument that its agreement to comply with section 10(k) decision only meant that it would refrain from forcing employer to assign work); *see also Pepper Construction Co. v. International Union of Operating Engineers, Local 150*, 749 F.2d 1242, 1247 (7th Cir.1984) (union's agreement to disclaim work disputed in section 10(k) proceeding will bar union from seeking any back pay for the work assignment); *Carpenter's Local Union No. 1478 v. Stevens*, 743 F.2d 1271, 1279 (9th Cir. 1984) (refusing to allow "a variance in the employer's obligations under the labor agreement merely because the arbitrator's decision arises in the context of a section 301 proceeding instead of a Board proceeding"), *cert. denied*, — U.S. —, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985); *Chauffeurs and Helpers Local Union No. 50 v. McCartin-McAuliffe Mechanical Contractor, Inc.*, 708 F.2d 313, 315 (7th Cir.1983) (union's acceptance of settlement of work

dispute prior to conclusion of section 10(k) hearing bars union from enforcing contrary arbitrator's award). We therefore focus on the second prong of *Bill Johnson's* : does the union's suit have a "reasonable basis"?

C. Lack of reasonable basis—the supremacy doctrine.

1. General principles.

██ It is well-established that the "supremacy doctrine" bars an arbitrator from making an award inconsistent with a NLRB determination. *See e.g., Local Joint Executive Board v. Royal Center, Inc.,* 754 F.2d 835 (9th Cir.1985); *Carpenters' Local Union No. 1478 v. Stevens,* 743 F.2d 1271, 1278 (9th Cir.1984); *see also Howard Johnson Co. v. Detroit Local Joint Executive Board,* 417 U.S. 249, 262, 94 S.Ct. 2236, 2243, 41 L.Ed.2d 46 (1974); *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964).

In the precise context where a section 10(k) determination conflicts with an arbitrator's work assignment award, the Fifth and Sixth Circuits have held that the Board's section 10(k) determination must take precedence over a section 301 suit seeking to enforce an arbitrator's contrary award. *See International Union of Operating Engineers, Local No. 714 v. Sullivan Transfer, Inc.,* 650 F.2d 669, 676–77 (5th Cir.1981); *U.A.W. v. Rockwell International Corp.,* 619 F.2d 580, 582–83 (6th Cir.1980); *New Orleans Typographical Union No. 17 v. NLRB,* 368 F.2d 755, 767 (5th Cir.1966); *see also Pepper Construction Co.,* 749 F.2d at 1247; *cf. Associated General Contractors, Inc. v. International Union of Operating Engineers, Local 701,* 529 F.2d 1395, 1397–98 (9th Cir.), *cert. denied,* 429 U.S. 822, 97 S.Ct. 72, 50 L.Ed.2d 84 (1976) (section 301 contract action not precluded by section 10(k) ruling where former not inconsistent with latter); *Associated General Contractors of Massachusetts, Inc. v. Boston District Council of Carpenters,* 599 F.Supp. 1560, 1561–62 (D.Mass.1985) (same).

The circuit courts' interest in finality of the Board's determinations and their refusal to "permit the rights and obligations of the parties to vary with the forum," *Carpenters' Local Union No. 1846 v. Pratt-Farnsworth, Inc.,* 690 F.2d 489, 513 (5th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983), *cited in Carpenters' Local Union No. 1478,* 743 F.2d at 1279, have been echoed by the district courts that have considered situations analogous to the instant case and given precedence to the Board's section 10(k) decision. *See International Association of Bridge, Structural and Ornamental Ironworkers,* 347 F.Supp. at 1381–83; *Dock Loaders & Unloaders of Freight Cars & Barges, Local 854 v. W.L. Richeson & Sons, Inc.,* 280 F.Supp. 402, 404–05 (E.D.La.1968).

2. *Associated General Contractors* is distinguishable.

Local 32 argues, however, that the supremacy doctrine is inapplicable here because the arbitrator's award does not conflict with the NLRB's section 10(k) decision. Local 32 contends that the instant case is controlled by *Associated General Contractors of America, Inc. v. I.U.O.E., Local 701,* 529 F.2d 1395 (9th Cir.), *cert. denied,* 429 U.S. 822, 97 S.Ct. 72, 50 L.Ed.2d 84 (1976) (*AGC*), in which an arbitrator's award was held not to conflict with an NLRB section 10(k) decision.

In *AGC*, Local 701 and AGC, an employer group, agreed that AGC members would only hire subcontractors who employed Local 701 workers to operate concrete pumps. A member of AGC hired Pump-Con, even though Pump-Con had already contracted to employ only Teamsters to operate the pumps. In the resulting work dispute between Local 701 and the Teamsters, an arbitrator awarded the work to Local 701 members. The NLRB subsequently awarded the same work to the Teamsters. Local 701 then sought a declaratory injunction to bar AGC members from subcontracting their concrete pump operations to companies which had already made exclusive employment agreements with the Teamsters.

We recognized that in many cases "a judgment in favor of the union which lost before the NLRB could place the employer 'between the devil and the deep blue.'" *See AGC*, 529 F.2d at 1397 (citation omitted). But we found that the arbitrator's award to Local 701 did *not* necessarily conflict with the NLRB's work assignment, since AGC members could simply refuse to subcontract their pump operations to companies which had agreed to hire only Teamsters. By doing so, AGC members "would fulfill their contractual obligations to Local 701 under the Collective Bargaining Agreement without at the same time violating the N.L.R.B. order." *Id.* at 1398.

This line of reasoning is unavailable in the instant case. The party who owed the contractual duty to the union in *AGC* was also the primary employer—wielding complete control over the decision whether to hire a Local 701 subcontractor. In contrast, neither Jones Washington nor Crescent City can compel Weyerhaeuser to assign all longshoring activities to themselves or to Local 32 members; it is Weyerhaeuser which holds the power to hire and fire, and Weyerhaeuser has no contractual obligations to Local 32. To allow Local 32 to pressure either Jones Washington or Crescent City to pressure Weyerhaeuser could be to allow the union to exert "secondary" pressure, potentially an unfair labor practice under section 8(b)(4)(ii) of the NLRA.

A second key difference between the instant case and *AGC* is that here the section 10(k) work assignment is unconditional. The Board's order states that "Employees

of Weyerhaeuser Company, who are represented by Association of Western Pulp and Paper Workers, Local 10, are entitled to perform the work of handling of cargo from the warehouse or last point of rest to shipside and the tying up and casting off of lines." This unqualified assignment of work would conflict with *any* attempt by any of the parties involved to assign the stated work to members of Local 32.

In contrast, the NLRB order in *AGC* covered "all situations in which members of the [subcontractors' association which had contracted with the Teamsters] performed concrete pumping work for AGC contractors." *AGC*, 529 F.2d at 1396, *citing Joint Council of Teamsters No. 37*, 205 N.L.R.B. 383, 386 (1973). The NLRB order thus did not prohibit work from being assigned to a *non*-member of the subcontractors' association—which was the very recourse that we recommended to avoid any potential conflict between the NLRB work assignment and the arbitrator's award. *See* 529 F.2d at 1397–98.

■ We therefore conclude that *AGC* is distinguishable and that the arbitrator's award here conflicts with the NLRB's section 10(k) assignment of work to the AWPPW.[1]

■ Because the union is barred by the supremacy doctrine from enforcing the arbitrator's award, there is no "reasonable basis in law" for its grievance and section 301 claims. *Bill Johnson's*, 461 U.S. at 744, 103 S.Ct. at 2171. Because the union's suit also arose from an improper motivation—to circumvent the section 10(k) deci-

---

1. We have held that an NLRB decision will not be given preclusive effect if it did not "fully compl[y] with the standards of procedural and substantive due process that attend a valid judgment by a court...." *Edna Pagel, Inc. v. Teamsters Local Union No. 595*, 667 F.2d 1275, 1280 (9th Cir.1982), (quoting *Paramount Transportation Systems v. Teamsters Local 150*, 436 F.2d 1064, 1066 (9th Cir.1971)). However, we need not address the res judicata effect of a section 10(k) determination in order to resolve the issues before us today. Even if we were to conclude that a section 10(k) determination is not entitled to res judicata effect under the *Edna Pagel* standard, we would still apply the su-

premacy analysis outlined above to give the section 10(k) determination precedence over the contrary arbitration award. *See International Union of Operating Engineers, Local No. 714 v. Sullivan Transfer, Inc.*, 650 F.2d 669, 677 (5th Cir.1981) (finding that section 10(k) determination was not an administrative determination entitled to res judicata effect, but still relying on congressional policy favoring expeditious resolution of work assignment disputes to conclude that a "nonprevailing union cannot recover damages from an employer or another union to the extent that such a recovery would be repugnant to an N.L.R.B. section 10(k) determination.")

sion—under *Bill Johnson's* its suit amounts to an unfair labor practice. The Board's finding of an unfair labor practice is not arbitrary and capricious.

## II. The Board's finding is supported by existing interpretations of section 8(b)(4)(ii).

### A. Interpretations of coercion.

Apart from *Bill Johnson's*, our previous interpretations of section 8(b)(4)(ii) support the Board's finding. Section 8(b)(4)(ii)(D) of the NLRA makes it an unfair labor practice for a union to "threaten, coerce, or restrain any person" with the objective of "forcing or requiring any employer to assign particular work to employees in a particular labor organization." 29 U.S.C. § 158(b)(4)(ii)(D). We have interpreted the scope of section 8(b)(4)(ii) pragmatically, looking to the "coercive nature of the conduct, whether it be picketing or otherwise," *NLRB v. International Brotherhood of Electrical Workers*, 405 F.2d 159, 162 (9th Cir.1968) (quoting *NLRB v. Fruit and Vegetable Packers and Warehousemen, Local 760*, 377 U.S. 58, 68, 84 S.Ct. 1063, 1069, 12 L.Ed.2d 129 (1964)), *cert. denied*, 395 U.S. 921, 89 S.Ct. 1772, 23 L.Ed.2d 237 (1967), and finding an unfair labor practice when there is "proof which if viewed realistically tends to show" a coercive effect. 405 F.2d at 162. *See Associated General Contractors of California, Inc. v. NLRB*, 514 F.2d 433, 438–39 (9th Cir.1975) ("coerce" was intended to "reach any form of economic pressure of a compelling or restraining nature").

Under this standard, we have held that a union may not enforce an arbitrator's award of in-lieu payments when the effect is to encourage a neutral employer to pressure the primary employer to hire union employees. *Id.* at 436, 438. Similarly, we have found that "the mere filing of" a retaliatory lawsuit by a union against its own members may amount to "coercion" under section 8(b)(1)(A), even if the suit is prosecuted in good faith or would be barred on the merits by res judicata. *United Stanford Employees, Local 680 v.*

*NLRB*, 601 F.2d 980, 983 (9th Cir.1979); *see Sheet Metal Workers*, 716 F.2d at 1261 (noting "the attendant monetary cost, anxiety, and loss of time," associated with defending against a retaliatory lawsuit, and finding that bringing a bad-faith action amounts to coercion under section 8(b)(1)(A)). Our holding that the union's section 301 suit against Jones Washington amounts to secondary coercion of Weyerhaeuser is consistent with our established view of the meaning of "coercion."

### B. Suits to enforce contractual rights.

We are aware that several circuit court and NLRB decisions have held that section 8(b)(4)'s "coercion" bar does *not* prevent a union from bringing a lawsuit to enforce its contractual rights. *See Carrier Air Conditioning Co. v. NLRB*, 547 F.2d 1178, 1191 & n. 15 (2d Cir.1976), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977); *Local 644, United Brotherhood of Carpenters v. NLRB*, 533 F.2d 1136, 1145 (D.C.Cir.1975); *Acco Construction Equipment, Inc. v. NLRB*, 511 F.2d 848, 852 (9th Cir.1975); *Local Union No. 48 of Sheet Metal Workers, International Association v. Hardy Corp.*, 332 F.2d 682, 686 (5th Cir.1964); *Bay Counties District Council of Carpenters*, 265 N.L.R.B. 646, 650 n. 10 (1982); *National Association of Broadcast Employees and Technicians and Metromedia*, 255 N.L.R.B. 372, 374 (1981), *petition dism'd (mem.) sub nom. Metromedia, Inc. v. NLRB*, 676 F.2d 711 (9th Cir.1982); *Laborers' International Union of North America, Local 89 and Sullivan & Associates*, 230 N.L.R.B. 638, 638–39 (1977).

In none of these cases, however, would the enforcement of the union's contract in court have resulted in a conflict with an existing section 10(k) Board determination. Thus, these decisions were never required to resolve the conflict between the policy of encouraging dispute resolution through the courts and the countervailing labor policy considerations of the supremacy doctrine. Instead, these decisions dealt with "arguably meritorious" claims that had not been precluded by a contrary NLRB determina-

tion, *see National Association of Broadcast Employees*, 255 N.L.R.B. at 374; *Laborers' International Union*, 230 N.L.R.B. at 639. Furthermore, when the union's "use of the contractual grievance procedure in connection with its demand for payment of lost wages amounted to 'thinly disguise[d] clearly coercive tactics,'" the NLRB has found section 8(b)(4) coercion to be present. *Brotherhood of Teamsters & Auto Truck Drivers Local 85*, 224 N.L.R.B. 801, 807–08 (1976), *quoting Southern California Pipe Trades District Council 16*, 207 N.L.R.B. 698, 700 (1973); *see Local Union No. 7, International Longshoremen's and Warehousemen's Union*, 273 N.L.R.B. No. 58 at 12 (Dec. 14, 1983) (finding section 8(b)(4)(ii)(D) violation when longshoremen's union sought to enforce arbitrator's award of time-in-lieu payments against company which had no direct control over work assignment and section 10(k) decision had already assigned work to AWPPW).

■ We therefore uphold the NLRB's finding of a section 8(b)(4)(ii)(D) violation. Because the section 10(k) order expressly requires the union to refrain from using "means proscribed by Section 8(b)(4)(D)," the Board's finding of noncompliance is also affirmed.

III. *The district court's refusal to confirm the arbitration award.*

■ In granting the NLRB's motion to dismiss in No. 84–4173, the district court considered evidentiary matters beyond Local 32's complaint, including affidavits and exhibits. Accordingly, we view the district court's judgment as one of summary judgment under Fed.R.Civ.P. 56, *see Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1032 n. 1 (9th Cir.1983), and examine *de novo* whether no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. *Id.* at 1033; *Garrett v. Lehman*, 751 F.2d 997, 999 n. 1 (9th Cir. 1985).

■ In light of our preceding discussion of the supremacy doctrine, *see supra*, sec-tion I–C, we must uphold the district court's refusal to confirm an arbitration award which conflicts with an NLRB section 10(k) work assignment. Local 32 argues, however, that the applicable state statute of limitations precludes Crescent City and the NLRB from even raising the "supremacy doctrine" as a defense.

Several decisions in this and other circuits have held that a party's failure to petition to vacate an arbitration award within the relevant statutory limitations period will preclude the assertion of affirmative defenses in a subsequent action to confirm the award. *See, e.g., Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir.1984); *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Celotex Corp.*, 708 F.2d 488, 490 (9th Cir.1983); *Sheet Metal Workers' International Association, Local No. 252 v. Standard Sheet Metal, Inc.*, 699 F.2d 481, 483 (9th Cir. 1983); *Service Employees International Union, Local No. 36 v. Office Center Services, Inc.*, 670 F.2d 404, 412 (3d Cir.1982); *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co.*, 628 F.2d 1023, 1025–27 (7th Cir.1980), *cert. denied*, 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). The relevant limitations period for any attempt by Crescent City to vacate the arbitrator's award is the three-month period prescribed by Washington state law. *See Sheet Metal Workers*, 699 F.2d at 483 n. 2; *San Diego County District Council of Carpenters v. Cory*, 685 F.2d 1137, 1140–42 (9th Cir.1982); Wash.Rev.Code Ann. § 7.04.180 (West 1961). Because the arbitrator issued his award on September 16, 1981, the applicable limitations period for vacating the award expired on December 16, 1981—two days before Local 32's complaint was filed in the district court. Local 32 therefore concludes that neither Crescent City nor the NLRB—which was alerted to Local 32's intent to enforce the arbitration award by early October, 1981 and did not intervene until March, 1982—may now raise the supremacy doctrine as a defense in this action.

Although we have held that "[o]rdinarily, a party opposing an arbitration award must move to vacate the award or be barred from further legal action," *Sheet Metal Workers*, 699 F.2d at 482, neither we nor the other circuits have applied this rule when the award, if enforced, would undermine a contrary section 10(k) NLRB work assignment. We decline to apply this rule to either the NLRB or Crescent City.

At the outset, we note that the rule by its own terms is limited to a "party" to the arbitration. *See id.* The NLRB was not a party to the arbitration. Nor has the rule been applied in the past against the NLRB, which acts not merely as a private party but as the primary determiner and enforcer of federal labor policy.

More importantly, Congress intended to make the section 10(k) proceeding the "peaceful and binding" final determination of a disputed work assignment, *see NLRB v. Radio and Television Broadcast Engineers Union, Local 1212*, 364 U.S. 573, 580, 81 S.Ct. 330, 335, 5 L.Ed.2d 302 (1961) (quoting 93 Cong.Rec. 136 (1947)); *see also Carey*, 375 U.S. at 272, 84 S.Ct. at 409. This intention would be undermined if the section 10(k) decision stood or fell by a private party's failure to move to vacate a contrary arbitration award within the state limitations period. "If this newly granted Board power to hear and determine jurisdictional disputes had meant no more than that, Congress certainly would have achieved very little to solve the knotty problem of wasteful work stoppages due to such disputes." 364 U.S. at 580, 81 S.Ct. at 335. Similarly, if the NLRB were barred from enforcing its section 10(k) decision simply because it failed to intervene after a contrary arbitration award had been issued, the Board would be required to monitor or intervene in every private arbitration suit that falls within the scope of a section 10(k) award. There is no evidence that Congress contemplated this burden when it enacted section 10(k) and made it preeminent over any arbitrator's decision.

Finally, in *Carey* the Supreme Court stated in dicta that the NLRB's superior section 10(k) authority could be invoked "at any time." *Carey*, 375 U.S. at 272, 84 S.Ct. at 409. Following *Carey*, the Fifth and Sixth Circuits have held that a section 10(k) determination made subsequent to an arbitration award will effectively void the preceding award. *See Rockwell International*, 619 F.2d at 583 (section 10(k) takes precedence over arbitration award "regardless of which action was initiated first"); *New Orleans Typographical Union*, 368 F.2d at 767; *Dock Loaders and Unloaders*, 280 F.Supp. at 404; *see also International Union of Operating Engineers, Local No. 714 v. Sullivan Transfer, Inc.*, 650 F.2d 669, 677 (5th Cir.1981). If we were now to enforce the three-month bar against the NLRB and Crescent City, an anomalous situation would result; a prior section 10(k) determination would become ineffective simply because the Board or a party failed to timely move to vacate a subsequent arbitration award, whereas a subsequent section 10(k) proceeding would automatically vacate a previous arbitration award, without any action by the loser of the arbitration. Such a situation would encourage the NLRB to delay its section 10(k) proceeding until after an arbitration award has been issued, so as to ensure that the section 10(k) proceeding is ultimately given precedence. Apart from its duplicative effect, this delay would thwart Congress' intent in enacting section 10(k) to expeditiously "try to get jurisdictional disputes settled," *Radio Engineers*, 364 U.S. at 579, 81 S.Ct. at 334. *See also Service Employees*, 670 F.2d at 412 (recognizing that federal policy favoring expedient resolution of labor disputes underlies the arbitration mechanism and statute of limitations scheme); *Jefferson Trucking*, 628 F.2d at 1027 (same).

We therefore hold that the failure to move to vacate an arbitration award within the applicable limitations period does not preclude a prior or subsequent section 10(k) decision from invalidating a contrary arbitration award. "The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as mani-

fested in ... federal statutes.... Where the enforcement of private agreements would be violative of that policy, it is the obligation of courts to refrain from such exertions of judicial power." *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83–84, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982) (quoting *Hurd v. Hodge,* 334 U.S. 24, 34–35, 68 S.Ct. 847, 852–53, 92 L.Ed. 1187 (1948) (footnotes omitted)). *See also I.U.B.A.C. Local Union No. 31 v. Anastasi Brothers Corp.,* 600 F.Supp. 92, 94 (S.D.Fla.1984) (employers did not waive their claim that contract upon which arbitration award was based was illegal when they failed to move timely to vacate award).

Because the Washington statute of limitations does not bar Crescent City or the NLRB from raising the supremacy doctrine, the district court's refusal to confirm the arbitration award is affirmed.

### IV. *Conclusion.*

The policies underlying the supremacy doctrine, as enunciated by the Supreme Court in *Carey* and the overwhelming body of circuit and district court decisions, indicate that a section 10(k) decision must be given precedence over an arbitrator's contrary decision. These same policies prevent a private party's failure to timely move to vacate an arbitration award from foreclosing the subsequent use of the supremacy doctrine to overturn the award.

Because Local 32 is barred by the supremacy doctrine from enforcing the arbitrator's award, there can be no "reasonable basis in law" for its grievance and section 301 suits. *Bill Johnson's,* 461 U.S. at 744, 103 S.Ct. at 2171. The union's suit also arose from an "improper motivation" to circumvent the section 10(k) decision; hence, under *Bill Johnson's* the suit amounts to an unfair labor practice. This result is supported by our interpretation of "coercion" under section 8(b)(4) of the NLRA, and is not barred by decisions interpreting "coercion" in other contexts.

We therefore affirm the Board's finding that Local 32 committed an unfair labor practice and failed to comply with the Board's section 10(k) decision; grant the Board's application for enforcement of its section 10(k) decision; and affirm the district court's refusal to confirm the arbitration award.

No. 84–4173: AFFIRMED.

No. 84–7544: AFFIRMED.

No. 84–7646: ENFORCEMENT GRANTED.